**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CAROL LEAVITT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 C 7451 |
| | ) | |
| JOHN HANCOCK LIFE | ) | Judge Rebecca R. Pallmeyer |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant/Third-Party | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALVINA C. SAKOFF, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Carol Leavitt ("Plaintiff"), an Illinois resident, is suing John Hancock Life Insurance Company ("Defendant"), a Massachusetts company, to recover money Plaintiff claims she is owed as a third-party beneficiary to a life insurance policy issued by Defendant to Plaintiff's friend, Edward A. Sakoff ("Edward"). Plaintiff had been entitled to $150,000 under Edward's life insurance policy; before his death, however, Edward altered his policy to limit Plaintiff's share of the proceeds to $50,000. Plaintiff claims to have loaned Edward money in reliance on her understanding that she was entitled to $150,000 under the policy and would be notified by Defendant of any changes to her beneficiary status; Plaintiff claims that Defendant confirmed this understanding orally and in writing even after Edward altered his life insurance policy to reduce the amount of money to which Plaintiff was entitled. Plaintiff now sues Defendant for breach of contract as a result of Defendant's failure to notify Plaintiff of changes to the life insurance policy. She claims to have suffered $100,000 in

damages. Both parties have moved for summary judgment. For the reasons set forth below, both motions are denied.[1]

## FACTUAL BACKGROUND[2]

### 1.    January 5, 1999 Life Insurance Policy

On January 5, 1999, Defendant issued and delivered a life insurance policy (# UL 00 254 993) (the "Policy") to Edward Sakoff; Edward was the owner of the Policy and the "insured" under the Policy. (Def. LR 56.1 Stmt. ¶¶ 6, 8; 1/5/99 Policy, Ex. 5 to Def. LR 56.1 Stmt.) The Policy was

---

[1]     Plaintiff and Alvina Sakoff ("Alvina") were the two beneficiaries under the life insurance policy to which this dispute relates. Defendant, John Hancock Life Insurance Company, has filed a third-party complaint against Alvina and is therefore a third-party plaintiff in this action. (*See* 7/19/05 John Hancock Life Insurance Company's Third-Party Complaint Against Alvina C. Sakoff.) In its one-count complaint, John Hancock claimed that, in the event Plaintiff is successful in her complaint for breach of contract and is found to be entitled to a greater portion of benefits under the disputed life insurance policy than what she has previously received, John Hancock is entitled to indemnification from Alvina on the principles of unjust enrichment and restitution. (*See id.*) John Hancock's claim against Alvina has no bearing on the outcome of the cross-motions for summary judgment addressed in this opinion. Although Alvina is, like Plaintiff, an Illinois resident, John Hancock's complaint does not affect the court's diversity jurisdiction over this action. If a case is properly within the court's diversity jurisdiction and the defendant files a third-party complaint against a resident of the plaintiff's state, as occurred here, the court does not lose jurisdiction over the plaintiff's claim. *Fidelity and Deposit Co. of Md. v. City of Sheboygan Falls*, 713 F.2d 1261, 1266 (7th Cir. 1983) (citations omitted) ("Although not consistent with the principle of complete diversity, this rule is required by the competing principle that jurisdiction should depend on the facts when the complaint was filed. The defendant is not permitted to defeat the plaintiff's right to a federal forum by impleading a resident of the plaintiff's state any more than he would be permitted to do so by becoming a resident of that state.")

[2]     The court derives the factual background from John Hancock Life Insurance Company's Statement of Material Facts to Which There is no Genuine Issue ("Def. LR 56.1 Stmt."), Plaintiff's Response to John Hancock Life Insurance Company's Statement of Material Facts to Which There is no Genuine Issue ("Pl. LR 56.1 Resp."), Carol Leavitt's Statement of Material Facts to Which There is no Genuine Issue ("Pl. LR 56.1 Stmt."), John Hancock Life Insurance Company's Response to Carol Leavitt's Statement of Material Facts to Which There is no Genuine Issue ("Def. LR 56.1 Resp."), and John Hancock Life Insurance Company's Statement of Additional Material Facts to Which There is no Genuine Issue that Require Denial of Plaintiff's Motion for Summary Judgment ("Def. Supp. LR 56.1 Stmt."). Defendant fails to provide support for many of its additional statements of fact, (*see* Def. Supp. LR 56.1 Stmt. ¶¶ 22-29); to the extent the court cannot locate the appropriate support, the court ignores these statements. Defendant argues, generally, that Plaintiff has improperly attempted "to add facts in her response brief." (Def. Reply at 4-5.) In reaching its decision here, the court relies only on undisputed factual assertions supported by evidence in the record.

for $250,000 and stated, in relevant part, that upon the death of the insured, Defendant would pay the death benefit to the beneficiary, assuming the death occurred while the Policy was in force. (Def. LR 56.1 Stmt. ¶ 7; 1/5/99 Policy at JH0001.)  The Policy, together with the written application for the Policy, constituted "the entire contract between the applicant and [John Hancock]," but "additional written applications for policy changes . . . [could] be submitted to [John Hancock] after issue and if accepted by [John Hancock] such additional applications [would] become part of the policy."  (Def. LR 56.1 Stmt. ¶ 6; 1/5/99 Policy at JH0014.)

The Policy confirmed that its owner had the absolute "power to exercise all rights and privileges," including the right to change the Policy's beneficiaries, "without the consent of any other person unless [the owner] provide[d] otherwise by written notice."  (Def. LR 56.1 Stmt. ¶¶ 9, 11; 1/5/99 Policy at JH0012.)  The Policy stated that the owner and the beneficiaries are those individuals identified in the application, unless the owner changes them or they are otherwise changed pursuant to language in Section 15 that is not relevant here.  (Def. LR 56.1 Stmt. ¶ 10, 1/5/99 Policy at JH0012.)  If the owner changes the owner or beneficiary by written notice, a change or revocation does not take effect unless John Hancock acknowledges receipt of the notice; such a change becomes effective as of the date of the insured's written notice.  (Def. LR 56.1 Stmt. ¶ 12; 1/5/99 Policy at JH 0012.)  The Policy also states that "[c]hanges in this policy may be made only by agreement between you and [John Hancock].  Only the President, Vice President, the Secretary, or an Assistant Secretary of the Company has authority to waive or agree to change in any respect any of the conditions or provisions of the policy, or to extend credit or to make an agreement for [John Hancock]."  (Def. Supp. LR 56.1 Stmt. ¶ 8; 1/5/99 Policy at JH0014.)

### 2.    Beneficiaries to Edward Sakoff's Life Insurance Policy

As of January 5, 1999, the sole beneficiary of Edward's life insurance policy with Defendant was his wife, Alvina C. Sakoff ("Alvina").  (Def. LR 56.1 Stmt. ¶ 9, 1/5/99 Policy at JH0003, 27.)  On February 2, 1999, Edward signed a Change of Beneficiary Form designating Alvina and Plaintiff as

the two primary beneficiaries; Edward designated on this form that in the event of his death, Alvina was to receive $100,000 and Plaintiff was to receive $150,000. (Def. LR 56.1 Stmt. ¶ 13; Pl. LR 56.1 Stmt. ¶ 7; 2/22/99 Change of Beneficiary Form at JH 0024-25, Ex. 5 to Def. LR 56.1 Stmt.) The form specified that "[t]he exercise of any rights and privileges under any policy to which this designation applies does not require notice to, nor the consent of, any revocable beneficiary." (Def. LR 56.1 Stmt. ¶ 13; 2/22/99 Form at JH0025.) When Defendant received Edward's February 2, 1999 Change of Beneficiary Form, it requested that Edward submit a corrected form because Edward had worded his designation incorrectly. (Def LR 56.1 Stmt. ¶ 14; 3/9/99 Letter at JH0128-29, Ex. 8 to Def. LR 56.1 Stmt.) Edward signed a corrected Change of Beneficiary Form on March 20, 1999, which provided that, upon his death, Alvina was to receive "$100,000 of the proceeds or the entire proceeds if less than $100,000 with the balance of proceeds if any to [Plaintiff]." (Def. LR 56.1 Stmt. ¶ 15; Pl. LR 56.1 Stmt. ¶ 8; 3/20/99 Change of Beneficiary Form at JH0022, Ex. 5 to Def. LR 56.1 Stmt.) This form also provided that Edward's exercise of his right to change beneficiaries "does not require notice to, nor the consent of, any revocable beneficiary." (Def. LR 56.1 Stmt. ¶ 15, 3/20/99 Form at JH0023.) Defendant sent Edward a letter on March 30, 1999, acknowledging Defendant's receipt of the March 20, 1999 form. (Def. LR 56.1 Stmt. ¶ 16; 3/30 99 Letter at JH0118, Ex. 9 to Def. LR 56.1 Stmt.)

It is undisputed that Plaintiff, who was formerly in the advertising business, had made numerous investment loans to Edward, who was Plaintiff's friend and client. (Pl. LR 56.1 Stmt. ¶¶ 6, 9; Pl. Dep. at 20-21, Ex. 8 to Pl. LR 56.1 Stmt.; Promissory Notes, Ex. 9 to Pl. LR 56.1 Stmt.) Plaintiff testified that Edward initially designated her as a beneficiary to a life insurance policy he had with a company other than John Hancock as early as the late 1970's, when Plaintiff first started to loan Edward money; according to Plaintiff, Edward later designated her as a beneficiary on the Policy with John Hancock "because it was cheaper to do it that way instead of to have a separate policy" for Plaintiff and his wife. (Pl. Dep. at 22-23.) When Edward initially made Plaintiff a

beneficiary under the Policy with John Hancock in 1999, Plaintiff claims to have called Defendant to verify that she was a beneficiary. (Pl. LR 56.1 Stmt. ¶ 11; Pl. Dep. at 28-30, 51.) Plaintiff testified that, in this conversation, someone in Defendant's life insurance department confirmed that she was the beneficiary of the Policy in the amount of $150,000 and that she would be notified of any changes to the Policy. (Pl. Dep. at 29.) Plaintiff took no notes on the conversation, and did not remember the name of the person with whom she spoke or the month in which the conversation occurred. (Def. Supp. LR 56.1 Stmt. ¶¶ 23-25; Pl. Dep. at 28-30.)[3]

Edward signed another Change of Beneficiary Form on October 21, 2000. This form directed that Alvina was to receive $200,000 at his death and Plaintiff was to receive $50,000; this Change of Beneficiary Form, like the earlier one, also contained language stating that the change did not require notice to, or the consent of, revocable beneficiaries. (Def. LR 56.1 Stmt. ¶ 17; 10/21/00 Change of Beneficiary Form at JH0020-21, Ex. 5 to Def. LR 56.1 Stmt.) Edward declined to elect that either Alvina or Plaintiff was an irrevocable beneficiary. (Def. LR 56.1 Stmt. ¶ 17; 10/21/00 Form at JH0021.) Upon receiving Edward's October 21, 2000 Change of Beneficiary Form, Defendant requested by letter that Edward submit a corrected form and specify the designations in percentages, rather than dollar amounts. (Def. LR 56.1 Stmt. ¶ 18; 10/27/00 Letter, Ex. 10 to Def. LR 56.1 Stmt. at JH0113.) Edward complied and, on November 3, 2000, he signed another Change of Beneficiary Form. (Def. LR 56.1 Stmt. ¶ 19; 11/3/00 Change of Beneficiary Form at JH0018-19, Ex. 5 to Def. LR 56.1 Stmt.) In this form, Edward provided that, upon his death, Alvina was to receive 80% of the proceeds, or $200,000, and Plaintiff was to receive 20% of the proceeds, or $50,000. (Def. LR 56.1 Stmt. ¶ 19; 11/3/00 Form at JH0018.) As before, this form indicated that notice to or consent from revocable beneficiaries was not required to change

---

[3] Defendant does not dispute that Plaintiff called Defendant in 1999 but denies, without citing to any evidence, that anyone told Plaintiff that she would be informed of changes to the Policy. (Def. LR 56.1 Resp. ¶ 11.)

beneficiaries; Edward did not elect to make Alvina or Plaintiff an irrevocable beneficiary. (Def. LR 56.1 Stmt. ¶¶ 19-20; 11/3/00 Form at JH0019.) Indeed, Alvina and Plaintiff were revocable beneficiaries at all times the Policy was in effect. (Def. LR 56.1 Stmt. ¶ 25.)

The November 3, 2000 form further provided that "[t]his designation replaces all previous beneficiary designations and optional methods of settlement, which are hereby revoked" and reserved Edward's right to make future changes to the Policy's beneficiaries. (*Id.* ¶ 22; 11/3/00 Form at JH0019.) On November 13, 2000, Defendant sent Edward a letter acknowledging the November 3, 2000 Change of Beneficiary Form and stating that the beneficiaries had been updated. (Def. LR 56.1 Stmt. ¶ 23; 11/13/00 Letter, Ex. 11 to Def. LR 56.1 Stmt.) Plaintiff was not advised of the changes made in the November 3, 2000 Change of Beneficiary Form. (Pl. LR 56.1 Stmt. ¶ 12; Pl. Dep. at 60-64.)[4] Edward made no further changes to the Policy's beneficiaries after November 3, 2000. (Def. LR 56.1 Stmt. ¶ 24; 9/12/02 Letter at JH0214-25, Ex. 12 to Def. LR 56.1 Stmt.; Affidavit of Sherly Rubin ¶¶ 4-5, Ex. 6 to Def. LR 56.1 Stmt.)

### 3. 2002 Events

Pursuant to a promissory note dated April 3, 2002, Edward was to repay Plaintiff for a $100,507 loan on July 1, 2002. (Pl. LR 56.1 Stmt. ¶ 13; Def. Supp. LR 56.1 Stmt. ¶ 26; Pl. Dep. at 14.) At some point after April 3, 2002, Edward asked Plaintiff to extend the due date of the loan by three months because Edward was undergoing open-heart surgery and would need additional time to pay Plaintiff back. (Pl. LR 56.1 Stmt. ¶ 13; Pl. Dep. at 15.) Plaintiff agreed to extend the date for payment; after granting Edward the extension, the promissory note previously due in the

---

[4] Defendant denies this statement on the basis that Plaintiff's cited source does not support that Plaintiff was not advised of the November 3, 2000 change in the designations of beneficiaries. (Def. LR 56.1 Resp. ¶ 12.) While Plaintiff's citation to page 59 of her deposition does not support her factual statement, other portions of Plaintiff's deposition do provide support for her assertion that she was not advised of the November 3, 2000 change. (*See* Pl. Dep. at 60-64.)

amount of $100,507 on July 1, 2002 became due on October 1, 2002 in the amount, including additional interest, of $105,532. (Ex. 9 to Pl. LR 56.1 Stmt.)

Before agreeing to the extension, however, Plaintiff asked for proof that Edward's life insurance policy, with Plaintiff as a beneficiary, was in effect at the time. (Pl. LR 56.1 Stmt. ¶ 13; Pl. Dep. at 15.) Edward provided to Plaintiff a June 26, 2002 letter written on Defendant's letterhead and sent from the "Contract/LDS Services" department. (6/26/02 Letter, Ex. 11 to Pl. LR 56.1 Stmt.) The letter was addressed to Edward and signed by Elvis Downes, a John Hancock Contract Assistant; the letter stated that there had been no change to the Policy's beneficiaries since the inception of the Policy and that the Policy remained in force with the following designees: Alvina Sakoff ($100,000) and Plaintiff ($150,000). (Pl. LR 56.1 Stmt. ¶¶ 14, 18; 6/26/02 Letter.) Defendant does not dispute that this letter contained incorrect information about Plaintiff's benefits under the Policy as of June 26, 2002. (Def. LR 56.1 Resp. ¶ 23.)

Downes testified that, before issuing such a letter, he would customarily check the status of the file to ensure that the information provided on the status of a policy was correct. (Pl. LR 56.1 Stmt. ¶ 19; Downes Dep. at 13, Ex. 12 to Pl. LR 56.1 Stmt.) In order to check the status of a policy, Downes had access to two of Defendant's electronic databases and could also request a physical file. (Pl. LR 56.1 Stmt. ¶ 20; Downes Dep. at 14.) It is not clear whether, after Defendant acknowledged Edward's November 2000 Change of Beneficiary Form, such information would have been contained in at least one of these three databases. While Plaintiff claims that is the case, (Pl. LR 56.1 Stmt. ¶ 22), Downes' testimony supports only that it is possible for one system to contain information that never makes it into other systems. (Def. LR 56.1 Resp. ¶ 22; Downes Dep. at 17-18.) That possibility does not require the conclusion that at least one of the systems would have contained the updated beneficiary information submitted in Edward's November 2000 Change of Beneficiary Form. In any case, Downes testified that he had access to the two electronic

databases, but Downes called "record services" and asked for the most recent beneficiary information on file in order to produce the June 26, 2002 letter. (Downes Dep. at 14, 20.)

The June 26, 2002 letter also stated that "per [Edward's] further instructions" to his insurance agency, Unisyn Group, Plaintiff would be notified of any changes in beneficiary designations at her Chicago address. (Pl. LR 56.1 Stmt. ¶ 14; 6/26/06 Letter.)[5] In fact, Plaintiff was never notified of any changes in the Policy's beneficiary designations. (Pl. LR 56.1 Stmt. ¶ 15; Pl. Dep. at 61-62.)[6] Downes admitted that he never notified Plaintiff of any changes in the Policy, and he is not aware of anyone else who notified Plaintiff of changes to the Policy. (Pl. LR 56.1 Stmt. ¶ 21; Downes Dep. at 15.) Plaintiff asserts that, in agreeing to give Edward a three-month extension to repay his debt, she relied on the assurance in the June 26, 2002 letter that she would receive $150,000 in the event of Edward's death. (Pl. LR 56.1 Stmt. ¶ 16; Pl. Dep. at 36.)

Edward died on July 15, 2002. (Def. LR 56.1 Stmt. ¶ 26.) At that time, Plaintiff believed she was entitled to $150,000 under the Policy, but Plaintiff was advised by Edward's son that she was entitled to just $50,000. (Pl. LR 56.1 Stmt. ¶ 24; Pl. Dep. at 31.) Plaintiff believes that she called Defendant to confirm the amount of the policy after Edward's death. (Def. LR 56.1 Resp. ¶ 25; Pl. Dep. at 32, 52.) On July 29, 2002, Alvina submitted a claim for death benefits under the Policy. (Def. LR 56.1 Stmt. ¶ 14; 7/29/02 Claim, Ex. 14 to Def. LR 56.1 Stmt.) On September 16, 2002, Plaintiff likewise submitted a claim for benefits under the Policy. (Def. LR 56.1 Stmt. ¶ 28; 9/16/02

---

[5]     The record reveals no information concerning the relationship or communications between Defendant and Edward's insurance agency, Unisyn Group.

[6]     Defendant objects to this assertion and contends that Plaintiff has not cited evidence to support that Defendant failed to notify her of any change in the beneficiary designation. (Def. LR 56.1 Resp. ¶ 15.) Defendant has not established a dispute of fact; while the specific pages of Plaintiff's deposition to which Plaintiff cites do not support Plaintiff's assertion, other portions of Plaintiff's do deposition support that, aside from initial contact to confirm her status as a beneficiary and contact after Edward's death, Plaintiff never spoke to anyone at John Hancock, and John Hancock never sent any letters to Plaintiff. (Pl. Dep. 30-31, 39-40.) Defendant cites no evidence to the contrary.

8

Claim, Ex. 15 to Def. LR 56.1 Stmt.) "Pursuant to the terms of the Policy and the November 3, 2000 Change of Beneficiary Form," Defendant paid Alvina $200,000 plus interest and paid Plaintiff $50,000 plus interest. (Def. LR 56.1 Stmt. ¶¶ 29-30.) This action followed.

## DISCUSSION

Plaintiff moves for summary judgment, arguing that she was a third-party beneficiary to the contract between Edward and Defendant and that Defendant's failure to notify Plaintiff of changes made to the Policy constituted a breach of contract. (Pl. Mem. at 2,4,6.) According to Plaintiff, her 1999 phone conversation with Defendant and Defendant's June 26, 2002 letter amounted to a modification of the Policy's terms, which required Defendant to notify Plaintiff of changes in the Policy. (*Id.* at 4-5.) In the alternative, Plaintiff argues that Defendant waived its right not to notify Plaintiff of changes to the Policy, and that she relied on the alleged waiver and suffered a loss of $100,000 as a result. (*Id.* at 5-6.) In response, Defendant contends that the Policy was not modified, that the policy imposes no obligation on Defendant to advise Plaintiff of changes to the designation of beneficiaries, and that Plaintiff did not rely on the June 26, 2002 letter when she initially loaned Edward $100,507. (Def. Opp'n at 7.) Defendant further argues that Plaintiff is improperly attempting to amend her complaint by presenting theories of contract modification and waiver on summary judgment. (*Id.* at 7-9.)

In its own motion for summary judgment, Defendant argues that it properly paid the amount of death benefits under the Policy in the amounts designated by Edward. (Def. Mem. at 6.) Defendant contends that it was not required to notify or obtain the consent of Plaintiff, a revocable beneficiary, before changing the Policy's designation of beneficiaries. (*Id.* at 9.) Plaintiff responds with the same arguments that form the basis for her summary judgment motion: that the Policy was modified so as to require Defendant to give notice to Plaintiff of changes in her beneficiary status; that Defendant waived its right not to notify Plaintiff of beneficiary changes both orally and in writing; and that Defendant's failure to notify Plaintiff of a change in her status as a beneficiary caused Plaintiff $100,000 in damage. (Pl. Opp'n at 4-6.)

### 1.    Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *J.S. Sweet Co., Inc. v. Sika Chem. Corp.*, 400 F.3d 1028, 1032 (7th Cir. 2005).    In determining whether a genuine issue of material fact exists, the court will construe all facts and draw all reasonable and justifiable inferences in the light most favorable to the non-moving party. *See J.S. Sweet Co.*, 400 F.3d at 1032 (citation omitted).  Because this case involves cross-motions for summary judgment, the court will "construe all inferences in favor of the party against whom the motion under consideration was made." *Employers Mut. Cas. Co. v. Skoutaris*, 453 F.3d 915, 923 (7th Cir. 2006) (citing *Huntzinger v. Hastings Mut. Ins. Co.*, 143 F.3d 302, 307 (7th Cir. 1998)).

### 2.    Plaintiff's Alleged Amendment of Her Complaint

Before addressing the parties' substantive arguments, the court turns to Defendant's procedural objections to Plaintiff's contract modification and waiver arguments.  Defendant argues that Plaintiff is improperly attempting to amend her complaint; according to Defendant, "[n]owhere in her pleadings has Plaintiff ever alleged any modification of the insurance contract or any claim based on legal theories of waiver or estoppel."  (Def. Reply at 7; Def. Opp'n at 7.)  Plaintiff contends that her breach of contract claim, which is based on her status as a third-party beneficiary to Edward's life insurance contract, has not changed since the date of filing.  (Pl. Reply at 3.)  The court agrees with Plaintiff.

Defendant is correct that parties cannot amend their complaints through summary judgment arguments.  *See Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002) ("'[A] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.'") (quoting *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)).  The court does not view this rule in isolation, however; it must be construed in light of the Federal courts' liberal notice

pleading standard.  Because Plaintiff's arguments relating to contract modification and waiver are within the scope of her complaint, the court need not address the litany of cases Defendant cites to support its argument that parties may not amend their pleadings in summary judgment briefing. (Def. Opp'n at 8-9.)

In relevant part, Federal Rule of Civil Procedure 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Notice pleading does not require a plaintiff to plead facts or legal theories.  *See Hefferman v. Bass*, 467 F.3d 596, 599 (7th Cir. 2006); *see also Cler v. Ill. Educ. Ass'n*, 423 F.3d 726, 729 (7th Cir. 2005) ("In this regard, the Supreme Court has cautioned that '[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.'") (quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957)).  "[T]he development of legal theories and the correlation of facts to theory come later in the process."  *Int'l Mktg, Ltd. v. Archer-Daniels-Midland Co., Inc.*, 192 F.3d 724, 733 (7th Cir. 1999).

In this case, Plaintiff's complaint makes clear that she brings her breach of contract claim as a third-party beneficiary to the life insurance contract between Edward and Defendant.  (Compl. ¶¶ 16, 19.)  Plaintiff alleged that a representative of Defendant confirmed in the June 26, 2002 letter that Plaintiff was to receive $150,000 under Edward's Policy; that Defendant only paid her $50,000 pursuant to the November 3, 2000 Change of Beneficiary Form; and that Plaintiff was never notified of changes to the Policy's beneficiaries until after September 16, 2002.  (Compl. ¶¶ 11, 14, 17.) Plaintiff further attached to her complaint the June 26, 2002 letter indicating that Defendant would notify Plaintiff of changes to the Policy; Plaintiff's contract modification and waiver arguments rely, in large part, on this June 26, 2002 letter.  (Compl. ¶ Ex. C.)  That Plaintiff did not specify the particular legal theories of contract modification or waiver in her complaint is unimportant as long as the facts Plaintiff alleged gave Defendant "adequate notice of the basis of the suit."  *See, e.g.*,

*Wudtke v. Davel*, 128 F.3d 1057, 1061 (7th Cir. 1997) ("It is not necessary to specify particular legal theories in a complaint, so long as the facts alleged give adequate notice to the defendant of the basis of the suit.") Plaintiff's allegations, as described above, gave Defendant adequate notice of Plaintiff's claims here. Indeed, the facts alleged and the June 26, 2002 letter Plaintiff attached to her complaint are many of the same facts Plaintiff relies on in summary judgment briefing to make her arguments for contract modification and waiver. The court does not view Plaintiff's summary judgment arguments relating to contract modification and waiver as an improper attempt to amend her complaint.

### 3. Breach of Contract[7]

#### A. Contract Modification

Plaintiff first claims that Defendant was required to alert Plaintiff to changes to the Policy's beneficiaries based on a theory of contract modification.[8] (Pl. Mem. at 4-5.) It is undisputed that Edward's Policy, on its face, did not require Defendant to notify Plaintiff of changes to the Policy. (*Id.*) Plaintiff asserts that someone at Defendant's company told her in a 1999 phone conversation that she would be notified of changes to the Policy, (Pl. LR 56.1 Stmt. ¶ 11; Pl. Dep. at 28-30, 51), and it is undisputed that one of Defendant's employees, Elvis Downes, sent Edward a letter on June 26, 2002 confirming that Plaintiff would be notified of changes to Edward's beneficiaries under the Policy "per [Edward's] further instruction." (Pl. LR 56.1 Stmt. ¶ 14; 6/26/06 Letter.) Plaintiff

---

[7] The Policy is silent on the applicable state law, but the parties agree that Illinois law applies. (*See* Pl. Mem. at 4-6 (citing Illinois law); Def. Mem. at 7-10 (citing Illinois law and stating that Illinois law governs the terms of the Policy).) Both Plaintiff and third-party Defendant, Alvina Sakoff, reside in Illinois. (Def. LR 56.1 Stmt. ¶¶ 1, 3.) Defendant, John Hancock Life Insurance Company, is a Massachusetts company that transacts insurance business in Illinois. (*Id.* ¶ 2.)

[8] Defendant does not dispute that Plaintiff has standing to sue as a third-party beneficiary to the Policy. (Pl. Mem. at 4.) It is well established in Illinois that "if a contract is entered into for the direct benefit of a third person, the third person may sue for a breach of the contract in his or her own name, even though the third person is a stranger to the contract and the consideration." *Olson v. Etheridge*, 177 Ill. 2d 396, 404, 686 N.E.2d 563, 566 (1997) (citing *Joslyn v. Joslyn,* 386 Ill. 387, 400, 54 N.E.2d 475 (1944); *Carson Pirie Scott & Co. v. Parrett,* 346 Ill. 252, 257, 178 N.E. 498 (1931)).

argues that Defendant "undertook to provide such notice voluntarily" by stating, both orally and in writing, that Plaintiff would be notified of changes to the Policy.  (Pl. Mem. at 4-5.)  Defendant argues that the Policy was not modified by oral or written communications.  (Def. Opp'n at 9-12.)

A contract modification occurs when new elements are introduced into the details of a contract and others are cancelled but the general purpose and effect of the contract is left undisturbed.  *Int'l Bus. Lists, Inc. v. American Tel. & Tel. Co.*, 147 F.3d 636, 641 (7th Cir. 1998) (citing *Downers Grove Assocs. v. Red Robin Int'l, Inc.*, 151 Ill. App. 3d 310, 502 N.E.2d 1052 (1st Dist. 1986)).  In order to validly modify a contract under Illinois law, the parties must satisfy all of the criteria for contract formation—offer, acceptance, and consideration—as they apply to the modification.  *Schwinder v. Austin Bank of Chicago*, 348 Ill. App. 3d 461, 468, 809 N.E.2d 180, 189 (1st Dist. 2004) (citations omitted).  Hence, one party cannot modify a contract "in an *ex parte* fashion . . . without the knowledge and consent" of the other party to the agreement; the parties' mutual assent to a modification is essential.  *See id.* (citations omitted).  A modification is valid, however, if the party who did not propose the modification is shown to acquiesce to it through a course of conduct consistent with acceptance.  *See Int'l Bus. Lists*, 147 F.3d at 641 (citing *Maher & Assocs., Inc. v. Quality Cabinets*, 267 Ill. App. 3d 69, 640 N.E.2d 1000 (2d Dist. 1994)).  The court examines whether either the oral or written communications in this case constituted a contract modification in turn.

### i.  Oral Modification

Plaintiff claims that the Policy was modified orally when "John Hancock employees [told Plaintiff] in phone conversations that she [would] be notified of any changes to the policy," which, according to Plaintiff, thereafter required Defendant to notify Plaintiff of changes to the Policy's

beneficiaries. (Pl. Mem. at 5.)[9] Defendant argues that only the parties to the Policy themselves could have modified its terms. (Def. Opp'n at 9-11.) The court agrees with Defendant.

Plaintiff is correct that, under Illinois law, a contract can be modified by a subsequent oral agreement. *See Much v. Pacific Mut. Life Ins. Co.*, 266 F.3d 637, 644 (7th Cir. 2001) (citing *Tadros v. Kuzmak*, 277 Ill. App. 3d 301, 660 N.E.2d 162, 170 (1st Dist. 1995)). Even in the case of an oral modification, however, all of the criteria for contract formation—offer, acceptance, and consideration—must be satisfied. *See Schwinder*, 348 Ill. App. 3d at 468, 809 N.E.2d at 189. Nothing in the record indicates that the 1999 phone conversation was with any of Defendant's employees that had the authority to waive or modify the Policy's provisions. (*See* Def. Supp. LR 56.1 Stmt. ¶ 8; 1/5/99 Policy at JH0014.) ("Changes in this policy may be made only by agreement between you and [John Hancock]. Only the President, Vice President, the Secretary, or an Assistant Secretary of the Company has authority to waive or agree to change in any respect any of the conditions or provisions of the policy, or to extend credit or to make arrangements for [John Hancock].") More importantly, however, there is no indication that Edward himself had any knowledge of or played any role in the 1999 phone conversation when one of Defendant's employees allegedly told Plaintiff that she would be notified of changes to the Policy's beneficiaries. Accordingly, Edward could not have consented to or accepted any modification to the Policy as a result of this conversation. Nor is there any evidence that he gave any consideration for the purported modification. Because one party cannot modify a contract "in an *ex parte* fashion . . . without the knowledge and consent" of the other party to the agreement, the 1999 phone conversation between Plaintiff, a third-party beneficiary to the Policy, and one of Defendant's employees did not modify the Policy's terms. *See id.* at 468.[10]

---

[9] Although Plaintiff refers to multiple "phone conversations," she offers evidence of just one phone conversation before Edward's death.

[10] Plaintiff does not cite any case law to support that a third-party has the ability to
(continued...)

### ii.    Written Modification

Plaintiff also contends that the June 26, 2002 letter constituted a written modification of the Policy and, because the letter was sent from Defendant to Edward, that it was an extension of the parties' original agreement.  (Pl. Mem. at 5.)  Defendant argues that this letter does not establish that there was an offer, acceptance, and consideration, which is necessary for a valid modification, and that the author of the letter lacked the authority to modify the terms of the Policy.  (Def. Opp'n at 11-12.)  The court need not reach Defendant's argument regarding whether the letter establishes a valid offer, acceptance, and consideration as is required for a contract modification because, under the plain language of the Policy, the June 26, 2002 letter is insufficient to alter its terms.

When a contract's language is clear and unambiguous, the words of the contract will be given "their plain, ordinary, and popular meaning."  *See Cent. Ill. Light Co. v. Home Ins. Co.*, 213 Ill.2d 141, 153, 821 N.E.2d 206, 213 (2004) (citing *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 152 Ill.2d 90, 108, 607 N.E.2d 1204 (1992)).  The Policy between Edward and Defendant clearly and unambiguously stated that "[o]nly the President, Vice President, the Secretary, or an Assistant Secretary of the Company" could change or waive, "in any respect," any of the provisions or conditions of the Policy.  (Def. Supp. LR 56.1 Stmt. ¶ 8; 1/5/99 Policy at JH0014.)  The Policy also stated that its owner had the absolute "power to exercise all rights and privileges," including the right to change the Policy's beneficiaries, "without the consent of any other person unless [the owner] provide[d] otherwise by written notice,"  (Def. LR 56.1 Stmt. ¶¶ 9, 11; 1/5/99 Policy at JH0012), and that notice to or consent from revocable beneficiaries such as Plaintiff was not required to change beneficiaries.  (Def. LR 56.1 Stmt. ¶¶ 19-20, 25; 11/3/00 Form at JH0019.)[11]

---

[10](...continued)
modify a contract under which it is a beneficiary.

[11]     While some of this language is extracted from the Change of Beneficiary Form, as opposed to the text of the Policy, the language is nevertheless a part of the agreement between the parties.  The Policy is explicit that "additional written applications for policy changes . . . [could] be
(continued...)

Thus, unless the June 26, 2002 letter demonstrates that Edward, together with the President, Vice President, the Secretary, or an Assistant Secretary of Defendant, agreed to waive or alter the provision stating that Plaintiff need not consent to or be given notice of changes in her beneficiary status, the letter cannot modify the Policy's unequivocal terms.

The June 26, 2002 letter addressed to Edward was from Elvis Downes, who was then a "Contract Assistant" in Defendant's "contract services" section. (6/26/02 Letter; Downes Dep. at 9.) There is no indication that Downes' position, which included responsibility for processing claims related to individuals who were close to death and "dealing with insured, insureds, processing beneficiary changes, ownership changes, non-forfeiter options, and portfolio changes," was among those positions with the authority to alter the terms of Edward's Policy. (Downes Dep. at 7.) Nor has Plaintiff offered any evidence that Downes agreed to notify her of changes to the Policy's beneficiary designations at the direction of the President, Vice President, the Secretary, or an Assistant Secretary of Defendant's company. Similarly, nothing in Downes' deposition indicates that someone with the authority to alter the Policy directed or approved of the June 26, 2002 letter.[12] Drawing all reasonable inferences in Defendant's favor, as this court must when considering Plaintiff's arguments for summary judgment, the court reasonably infers that Downes did not have the authority to alter the terms of Edward's Policy. The June 26, 2002 letter merely indicates that

---

[11](...continued)
submitted to [John Hancock] after issue and if accepted by [John Hancock] such additional applications [would] become part of the policy." (Def. LR 56.1 Stmt. ¶ 6; 1/5/99 Policy at JH0014.)

[12]     In testifying about the circumstances under which he wrote the June 26, 2002 letter, Downes testified that he believed "on or around June 26, 2002 either the insured or the agency called relative to this letter," and that he "would have called [the insured], [and] asked him for . . . permission to get this letter out" if he was not the party originally requesting the letter; Downes stated that he "would have then checked [the] Mainframe System and/or [the] Workbench or Retail 2000 System and then . . . would have called our records services and asked what was the most recent beneficiary on file, taken that information and produced this particular letter here." (Downes Dep. at 10-11, 20.) Downes does not appear to dispute that the letter contained incorrect information; he testified that he did know "why the system was not updated to show the current designation of beneficiary benefits." (*Id.* at 20.)

Edward requested of his insurance agency, Unisyn Group, that Plaintiff be advised of changes in beneficiary designations, something that Edward's Policy did not require; a response agreeing to so notify Plaintiff from Elvis Downes, an individual who did not have the authority to alter the Policy, is therefore insufficient to constitute a contract modification.

### B. Waiver

Plaintiff's final argument in support of summary judgment is that Defendant's oral and written communications were an attempt to modify the Policy that resulted in a waiver of Defendant's right to make changes to the Policy's beneficiaries without notice to the beneficiaries. (Pl. Mem. at 5.) Defendant argues that Plaintiff cannot establish waiver of a known contractual right because there was no attempt at modification that could have led to a waiver, the Policy does not require Defendant to advise Plaintiff of beneficiary changes, and Plaintiff did not rely on the June 26, 2002 letter when she agreed to loan Edward $100,507, as that loan had already been made as of June 26, 2002. (Def. Opp'n at 12-13.)

As the court understands Plaintiff's argument, Plaintiff claims that Defendant waived the Policy's provision stating that Defendant did not have to give notice to revocable beneficiaries when changing beneficiary designations. Defendant argues that it could not have "waived" any such "right" because it had no obligation to give notice even absent any explicit reference in the Policy to Defendant's "'right' *not* to advise [Plaintiff] of beneficiary changes . . . ." (Def. Opp'n at 12, emphasis in original.) As explained earlier, the Policy incorporates additional written applications for policy changes. (*See supra* n.11; Def. LR 56.1 Stmt. ¶ 6; 1/5/99 Policy at JH0014.) The Change of Beneficiary Forms that Edward submitted state explicitly that the exercise of the right to change a beneficiary "does not require notice to, nor the consent of, any revocable beneficiary." (*See, e.g.*, 11/3/00 Form at JH0019.) Thus, the court concludes that the Policy did include a term conferring upon Defendant a "right" not to give notice to revocable beneficiaries of a change in their

beneficiary status. The issue, then, is whether Plaintiff has raised a factual dispute concerning the waiver of that right.

Generally, a "[w]aiver is 'an express or implied voluntary and intentional relinquishment of a known and existing right.'" *Havoco of Am., Ltd. v. Sumitomo Corp. of Am.*, 971 F.2d 1332, 1337-38 (7th Cir. 1992). Unlike contract modification, a waiver of contractual rights is not thought to "require special tokens of reliability," such as consideration, and "can be implied as well as express-implied from words or actions consistent with the assertion of those rights." *See Cole Taylor Bank v. Truck Ins. Exch.*, 51 F.3d 736, 739 (7th Cir. 1995) (citing *Ryder v. Bank of Hickory Hills*, 146 Ill.2d 98, 653 N.E.2d 46, 49 (1991); *Lavelle v. Dominick's Finer Foods, Inc.*, 227 Ill. App. 3d 764, 592 N.E.2d 287, 291 (1st Dist. 1992); *Havoco*, 971 F.2d at 1337). In Illinois, implied waiver has been viewed as a concept rooted in either waiver or estoppel and occurs when there is an intention to waive a right that can be clearly inferred from the circumstances, or, "where there is no such intention, the conduct of one party must have misled another into acting on a reasonable belief that a waiver has occurred." *Lavelle*, 221 Ill. App. 3d at 771, 592 N.E.2d at 291-92; *see Tibbs v. Great Central Ins. Co.*, 57 Ill. App. 3d 866, 868, 373 N.E.2d 492, 493 (5th Dist. 1978); *see also Central Ill. Pub. Serv. Co. v. Atlas Minerals, Inc.*, 965 F.Supp. 1162, 1173 (C.D. Ill. 1997) (citations omitted) (stating that an alleged waiver in Ililnois must have induced reliance or must be clearly inferable under the circumstances). It is the latter, estoppel-based conception of an implied waiver that is relevant to this case.

Plaintiff argues that Defendant's oral and written communications "constituted a waiver upon which [she] relied," and that she loaned money to Edward "based on the fact that she was a beneficiary of $150,000 under the policy." (Pl. Mem. at 6.) To the extent that Plaintiff characterizes these communications as an actual waiver, the court disagrees; under the plain and unambiguous terms of the Policy, an express waiver could not have occurred in this case. The Policy is explicit that only certain employees of Defendant had the authority to waive any of the provisions or

conditions of the Policy. (Def. Supp. LR 56.1 Stmt. ¶ 8; 1/5/99 Policy at JH0014.) Viewing the evidence in the light most favorable to Defendant when considering Plaintiff's motion for summary judgment, the court reasonably infers that neither the unknown individual that Plaintiff spoke to on the phone in 1999 nor Elvis Downes, who authored the June 26, 2002 letter, had authority to waive any of the Policy's provisions, including the provision stating that Defendant did not need to give Plaintiff notice of changes in beneficiary designations. But this does not conclude the court's waiver analysis; even if there is no actual waiver, Plaintiff can fairly argue that, in this case, "the conduct of one party . . . misled another into acting on a reasonable belief that a waiver has occurred." *Cf. Lavelle*, 221 Ill. App. 3d at 771, 592 N.E.2d at 291-92 (concluding, when party claimed on appeal that defendant impliedly waived its breach of contract claim, that the party could not argue a theory of estoppel-based implied waiver because there was no suggestion that party was misled into acting in any particular way based on a reasonable belief that a waiver had occurred). To invoke an implied waiver, Plaintiff need not show that Defendant actually waived any particular right, only that she was misled to believe that such a waiver occurred; thus, the application of an estoppel-based conception of implied waiver does not implicate the Policy's restrictions on which officers within Defendant's company had the authority to waive the Policy's terms.

Even under an implied waiver theory, however, the court concludes that remaining disputes of fact preclude summary judgment in Plaintiff's favor. Plaintiff relies on both her 1999 phone conversation with Defendant's representative and the June 26, 2002 letter from Elvis Downes in support of her implied waiver argument. The only evidence of the 1999 phone conversation is Plaintiff's own testimony, in which she also admits that she took no notes of the 1999 phone call, and does not remember with whom, or even in what month, the conversation occurred. (Pl. Dep. at 29-30.) While it is true that Defendant does not cite evidence to dispute what was said during the 1999 conversation, it remains Plaintiff's burden, as the party moving for summary judgment on a waiver theory, to inform the court "'of the basis for its motion, and identif[y] [evidence], which it believes demonstrate[s] the absence of a genuine issue of material fact.'" *See RKB Properties, Inc.*

19

*v. Bd. of Educ. of City of Chicago*, 468 F.3d 1005, 1009 (7th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The sparse record relating to the 1999 phone call, which is comprised only of Plaintiff's testimony, does not satisfy the court that Plaintiff has met her burden in proving that she was misled by Defendant's communications.

Even if the June 26, 2002 letter is sufficient, by itself, to mislead the Plaintiff into believing that she would be notified of changes to her beneficiary status, it remains unclear to the court whether there is any factual basis for Plaintiff's claim that she relied on this letter to her detriment— in other words, that had the letter not been sent, she would have been paid the $100,000 she now claims as damages. First, while Plaintiff testified that she discussed the June 26, 2002 letter with Edward and agreed to extend his loan for three months based on the assurance that she would receive $150,000 under the Policy, it is not clear from Plaintiff's testimony that she actually relied on the assurance in that letter that she would be notified of changes to her beneficiary status. (Pl. Dep. at 37-38.) Defendant disputes that there was any reliance. (Def. Opp'n at 13.) Second, Plaintiff has not set forth any facts to show that she would have been paid the $100,000 had she not received the letter and had called the loan on July 1, 2002, just weeks before Edward's death. In fact, according to Plaintiff, Edward requested an extension because he "needed additional time to pay the money back to Leavitt." (Pl. LR 56.1 Stmt. ¶ 13.) Because questions of fact remain that are material to whether Plaintiff relied, to her detriment, on her belief that a waiver had occurred, the court declines to grant summary judgment based on Plaintiff's waiver argument.

### 4.     Defendant's Remaining Arguments for Summary Judgment

In Defendant's view, this action should be analyzed as a straightforward contract dispute that requires Plaintiff to establish that a valid contract existed and that Plaintiff was damaged as a result of a breach of that contract. (Def. Mem. at 7-8.) According to Defendant, because it has paid Plaintiff all that she was entitled to under the "clear and unambiguous" terms of the Policy and the most current Change of Beneficiary Form at the time of Edward's death, Plaintiff cannot establish a breach. (*Id.* at 9-10.) Defendant is correct that, according to the November 3, 2000 Change of

Beneficiary Form, which Defendant acknowledged in a November 13, 2000 letter, Plaintiff was only entitled to $50,000 upon Edward's death; Defendant has paid Plaintiff this $50,000 benefit. (11/3/00 Form at JH0019; 11/13/00 Letter; Def. LR 56.1 Stmt. ¶ 30.) Despite the fact that Defendant paid Plaintiff the $50,000 she was owed under the Policy at the time of Edward's death, if Plaintiff reasonably believed that Defendant had committed to notifying Plaintiff of changes in her beneficiary status, and relied on this belief to her detriment, Plaintiff may still be entitled to recover damages. Because, for the reasons previously stated, the court leaves this determination to a trier of fact, the court declines to grant summary judgment in Defendant's favor.

## **CONCLUSION**

For the reasons explained above, Plaintiff's motion for summary judgment (33) is denied and Defendant's motion for summary judgment (28) is denied.

ENTERED:

Dated: February 23, 2007

_____
REBECCA R. PALLMEYER
United States District Judge